Dismissed and Majority and Concurring Opinions filed March 17, 2005









Dismissed and Majority and Concurring Opinions filed
March 17, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00267-CV

____________

 

SPIRO
NIKOLOUZOS by his wife, JANNETTE NIKOLOUZOS, Appellant

 

V.

 

ST. LUKE=S EPISCOPAL HOSPITAL, Appellee

 



 

On Appeal from the
189th District Court

Harris County,
Texas

Trial Court Cause No.
05-16058

 



 

C O N C U R R I N G   O P I N I O N

I write separately for two reasons.  First, in the very short time we have had to
research the issues in this case, I believe the decision is correct; however,
if it is not, I want to allay any thoughts by the Nikolouzoses that they might
have been able to prevail on the merits if we had jurisdiction.  Next, I want to address procedural problems
inherent in the statute, making it an ineffectual tool for both families of
patients and health care providers.

 

 








I turn first to the proof presented below.  I acknowledge that our normal procedure when
we have no jurisdiction is to dismiss the case without addressing its
merits.  This is an exceptional case,
however, and the family might appreciate knowing that, in my view, the outcome
would not have changed even if we had jurisdiciton. 

            As
noted in the majority opinion, the statute at issue requires proof, Aby a preponderance of the evidence,
that there is a reasonable expectation that a physician or health care facility
that will honor the patient=s directive will be found if the time extension is granted.@ 
Tex. Health & Safety Code
Ann. ' 166.046(g) (Vernon Supp. 2004B05). 
A review of the sworn applications presented at the two hearings reveals
that this level of proof was not met.

Mrs. Nikolouzos attached to her first application for TRO her
own affidavit attesting to the accuracy of the facts contained in the
application.  According to those facts, APlaintiff feels that there are
doctors and hospitals who will be willing to continue treatment for Spiro if
sufficient time is given to adequately contact all relevant parties.@ 
The trial judge told the parties this affidavit did not reflect a
reasonable expectation that a doctor or another health care facility would
honor Mr. or Mrs. Nikolouzos=s directive.  The trial
judge also observed that no other affidavit, or any other evidence, was
offered.  As a result, the trial judge
denied the TRO while expressing her compassion for the family=s plight and her sincere regret.

Two days later, Mrs. Nikolouzos filed a second application
for TRO, which the trial judge agreed to hear, though noting that a rehearing
was an exceptional procedure for an exceptional case.  At this second hearing, Mrs. Nikolouzos
attached a more detailed affidavit in which she averred the following:

!                  
that she had
contacted Avalon Place, a skilled nursing home facility in San Antonio; and 

!                  
that
a social worker there told her Ait looked likely that Spiro would get accepted at Avalon
Place and that they had a room for him.@ 
             








She also attached a letter from Dr. John Sterling Meyer
stating that Spiro Nikolouzos did  not
meet the criteria for Abrain death@ because cerebral blood flow was present.  

When some question arose as to the accuracy of the doctor=s affidavit and the sufficiency and
admissibility of this evidence, the trial judge agreed twice to recess for
several hours to enable Mrs. Nikolouzos to obtain additional evidence.  However, even with these two recesses, Mrs.
Nikolouzos was unable to obtain the necessary proof that a doctor or another
health care facility was willing to take Mr. Nikolouzos.  

By the conclusion of the additional hearings, counsel for Mrs.
Nikolouzos was forced to admit that, in spite of their efforts, their most
promising alternative health care facility, Avalon Place, had declined to
accept Mr. Nikolouzos because his Medicare eligibility would be reduced to 80%
coverage within two days.  Mrs.
Nikolouzos would need to obtain Medicaid benefits to cover the additional 20%
of the cost of his care, and no application for Medicaid had been made.  In addition, Mrs. Nikolouzos=s attempt to obtain authorization
from Dr. Bryan Walker to have Mr. Nikolouzos released to home care with a
home-based ventilator failed; Dr. Walker told them this was impossible.

As for the proof already before the court from Dr. John Meyer
that Mr. Nikolouzos was not brain dead, St. Luke=s has pointed out, and the trial
judge found, this evidence, if admissible, was irrelevant to the issue before
the court.  Section 166.046 permits the
withdrawal of life-sustaining care for patients who are not brain dead if the
hospital=s ethics committee has determined the
care is inappropriate.

So, this was the state of the record before the trial judge
when she denied the request for temporary restraining order.  She was correct to tell Mrs. Nikolouzos and
other family members, AI>m sorry . . . I believe that the [Nikolouzoses] have worked
very hard and the family is very grieved, as any family would be, but I=m sorry that the TRO is still denied.
. . .@








Thus, although the family expended great effort to meet its
burden, and although there were some glimmers of hope for it, ultimately the
family was unable to give the court assurance of any sort that Mr. Nikolouzos
could be moved elsewhere.  Based upon
this record, I would not have found that the trial judge abused her discretion
in denying Mrs. Nikolouzos=s applications for temporary restraining orders. 

This leads me to my second point.  This statute is replete with procedural
problems that threaten to sabotage a family=s attempt to obtain additional time
under section 166.046(g) to locate alternate care for its loved one.  The problems all stem from lack of
specificity in the statute and could be rectified if the legislature chose to
be as specific in this statute as it has been, for example, with the procedures
a minor must follow to obtain an abortion without notification to one of her
parents.  Tex. Fam. Code ' ' 33.001 et seq.  This subject deserves no less specificity
because this statute affects no less than the life and death of men, women, and
children.  Counsel=s attempts to comply with the statute
and its short deadlines underscore the problems the statute creates.  I summarize them below.








To obtain an immediate hearing within the ten-day period
provided by the statute, Mrs. Nikolouzos filed an application for a TRO because
the statute offered no alternatives.  But
as we have already held, this procedural avenue is inadequate, most obviously
because it leaves a party without a right to appeal.  Counsel confronted other problems also.  The statute requires proof by a preponderance
of the evidence that Athere is a reasonable expectation that a physician or health
care facility that will honor the patient=s directive will be found if the time
extension is granted.@  Tex. Health & Safety Code Ann. ' 166.046(g) (Vernon Supp. 2004B05). 
Hearings on applications for TROs, however, are not evidentiary
hearings.  The purpose of a TRO is to
preserve the status quo of the subject matter of the litigation until a
preliminary hearing can be held on an application for a temporary
injunction.  Cannon v. Green Oaks
Apts., Ltd., 758 S.W.2d 753, 755 (Tex. 1988) (per curiam).  The status quo is the last, actual,
peaceable, noncontested status that preceded the controversy.  Big Three Indus., Inc. v. R.R. Comm=n, 618 S.W.2d 543, 548 (Tex. 1981); State v.
Southwestern Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975).  The last noncontested status in this case
occurred before St. Luke=s determined that continued life-sustaining care was
inappropriate.  Thus, Mrs. Nikolouzos
sought a TRO to maintain that status quo pending a hearing on a temporary
injunction, at which time evidence would be produced that another health care
facility would accept Mr. Nikolouzos. 
Under this unique statutory scheme, the time to produce his evidence was
at the TRO hearing, not the temporary injunction hearing.  In short, the lack of a specific procedure
leaves already bereaved families with no clear procedure to secure alternate
care for their loved one.

Admittedly, the legislature has many important issues to
address in an undeniably  short
time.  But this is an important issue
that has a solution.  If the legislature
addresses the problems listed below, all of which either arose in this case, or
could have arisen, it can at the very least lessen the load for both families
and health care facilities.

First, the statute should state specifically in which court a
family or trustee must file the action. 
Currently, the statute provides only that the action should be filed in Athe appropriate district or county
court.@ 
Tex. Health & Safety Code
Ann. ' 166.046(g) (Vernon Supp. 2004B05). 
When the Nikolouzoses filed in the district court, St. Luke=s moved for a dismissal claiming that
the probate court in Harris County had exclusive jurisdiction.  See Tex.
Gov=t Code ' 25.0021(b).  In contrast, the parental notification bill
leaves no room for guess work by declaring that a bypass request may be Afiled in any county court at law,
court having probate jurisdiction, or district court, including a family
district court, in this state.@  Tex. Fam. Code.  ' 33.003(b).








Next, the statute should direct a family what to call their
action, specify the steps a family must take to have its complaint heard, and
include timetables within which the parties and the court must act.  Currently, the statute gives no direction on
these issues.   See  Tex.
Health & Safety Code Ann. ' 166.046 (Vernon Supp. 2004B05).  
No doubt perplexed as to the proper procedure to follow, counsel for
Mrs. Nikolouzos filed an original and amended petition in which he asked for a
TRO and injunctive relief; probably he did this because procedures are already
established in Harris County for a judge to provide a quick hearing when a
party requests a TRO.  In contrast, the
parental notification bill tells a requesting party and the courts and their
clerks exactly what an action should be called, informing all of these persons
that a minor should file an Aapplication.@  Tex. Fam. Code  ' 33.03(a).  Styling the action as an Aapplication@ and referring to the parental
notification statute enables a court and its personnel to know immediately that
they are dealing with a very specific type of case with its own unique
accelerated procedures.

Finally, the statute should state if the family or hospital
has the right of appeal from a ruling on a request for an extension of time
under section 166.046(g).  Currently, the
statute says nothing about an 
appeal.  See Tex. Health & Safety Code Ann. ' 166.046 (Vernon Supp. 2004B05). 
In the parental notification bill, the legislature explicitly addressed
the right to appeal.  Tex. Fam. Code ' 33.004. 

In short, in its current form, the statute creates confusion
where there should be clarity. This confusion not only is a disservice to both
families and health care providers, but also ironically increases litigation
when it should lessen it.  I respectfully
urge the legislature to revisit section 166.046 and to clarify the procedures a
family must follow to secure alternate care for their loved one.  The legislature has already seen the
importance of clarity at the inception of life; clarity is no less important at
the end of life.  

With these comments, I concur in the court=s opinion and judgment.  

 

/s/        Wanda McKee Fowler

Justice

 

Judgment rendered and Majority and
Concurring Opinions filed March 17, 2005.

Before the court en banc.